UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **SHALONDA CUYLER**, | CASE NO. 1:03CV2083 |
| **Plaintiff,** | JUDGE CHRISTOPHER A. BOYKO |
| vs. | |
| | **OPINION AND ORDER** |
| **RAYCOM MEDIA, INC., etc., et al.** | |
| **Defendants**. | |

**CHRISTOPHER A. BOYKO, J**.:

This matter comes before the Court upon the motions for summary judgment of Defendant Raycom Media, Inc. ("Raycom") and Defendant National Association of Broadcast Employees & Technicians – CWA, Cleveland Local 42 ("Union"). For the reasons which follow, the motions for summary judgment are granted and the trial scheduled for August 8, 2005 is cancelled.

**I. FACTUAL BACKGROUND**

Plaintiff, Shalonda Cuyler, an African-American female, was hired as a full-time Production

Assistant at WOIO/WUAB Channels 19 and 43, television stations operated by Raycom, on January 28, 2002. Her starting pay was $18,500, per the scale in the Union contract at the time. The Union and the employer were parties to a collective bargaining agreement covering various bargaining unit employees, including plaintiff. The collective bargaining agreement includes a grievance procedure.

As a production assistant, plaintiff supplied a hard copy of the printed scripts for the news show to the on-screen news anchors and turned the knob for them as they read the news from the teleprompter. The anchors required a written script available as a back-up in case the teleprompter malfunctioned. Plaintiff's job included taking the scripts off the printer and delivering them to the anchor desk. Once the initial scripts were delivered, plaintiff was to wait for changes and deliver those to the anchor desk as they came off the printer.

Cuyler was hired by the Senior Director/Supervisor, Rich Hirz and he was her immediate supervisor throughout her employment. Leesa Dillon, the News Director, is African-American and was Hirz's supervisor.

Plaintiff began to complain about some issues in May of 2002. She alleged that after a verbal confrontation on May 24, 2002 with another production assistant, about which both were given verbal warnings, that she was shoved by Hirz. She did not claim that he pushed her for any racially-related reason; and the "witnesses" she identified, denied seeing Hirz push her or hearing anything about plaintiff being pushed. Around the same time, plaintiff complained about alleged wage discrepancies, supposed alteration of her time sheet by Hirz, an alleged failure to honor her seniority status regarding job assignments and days off, and supposed disparate pay treatment.

Plaintiff verbally complained and wrote letters. However, she did not file a formal grievance through her Union at that time. A grievance filed on February 6, 2003 was not processed by the Union because it was untimely and without merit.

Raycom investigated her complaints, had meetings with her and sent her letters and memos. Plaintiff also was warned about incidents in which she displayed improper graphics and banners for two newscasts in July and August of 2002. Hirz spoke to her about leaving the newsroom without permission. When Dillon met with her about her duties and schedule, Cuyler responded rudely. At a September 2002 meeting among plaintiff, her supervisors, and a Union representative, Cuyler was provided a job description and a memo outlining current pay procedures under the company's revised payroll system. Again, in November of 2002, the station manager and a payroll officer met with Cuyler to discuss her salary concerns. They prepared for her a spreadsheet with a breakdown of her pay for the previous quarter, along with time sheets and pay stubs. Cuyler acknowledged that she understood the explanations provided. Further, she was instructed to go through the chain of command at the station, rather than writing the President/CEO with any future complaints.

On January 16, 2003, plaintiff was given a final warning from Dillon, the News Director. She was critiqued for allegedly refusing to perform pre-production work on December 20, 2002. Another issue was plaintiff leaving the premises on at least one occasion, and going to a nearby food store without management approval. In addition to reminders about other unsatisfactory work, plaintiff was advised that future sub-par performance would subject her to immediate dismissal.

February is "sweeps" month when the stations are rated on viewership. On February 7, 2003, plaintiff was assigned to do the scripts for the 5:00 evening news show. The Executive

Producer and the news anchor reprimanded Cuyler for being late with the scripts for the show. In fact, she did not provide them until after the show was on air. At one time, Cuyler admitted that she was in the break room and lost track of time. Since then, she has provided different accounts and denies that she was late at all. However, no witness can corroborate the contention that she was on time with the written scripts.

A disciplinary meeting was held on Monday, February 10, 2003, with Dillon, Assistant News Director Levine, Executive Producer Raynak, Cuyler, and two Union Stewards present. The Union learned that the February 7, 2003 newscast began without written scripts because Cuyler did not deliver them promptly and that she could not be located at air time. Plaintiff was told that she was being dismissed; and she immediately left the room. The Union Stewards objected to the severity of the discipline. Management disagreed; and the Union representatives announced their intention to pursue contractual remedies.

The Union filed a grievance on February 11, 2003 challenging plaintiff's discharge. A formal letter denying the grievance was sent to the Union and the plaintiff was notified in writing that she was terminated for "unsatisfactory performance and conduct". The Union initiated the arbitration process. However, after reviewing the employer's records and plaintiff's documentation, and following interviews with plaintiff, the Union's attorney, Matthew Harris (out of Union headquarters in Washington, D.C.) concluded that the challenge was weak and that arbitration would not be pursued. Raycom had two eyewitnesses and an admission from Cuyler; while Cuyler had no witnesses other than herself and her blanket denial. Harris found that she would not make a favorable impression as a witness; that she had little seniority in the company; that she had a record

-4-

of performance and attitude problems; and that she was on final warning at the time of her discharge.

Plaintiff filed charges against Raycom and the Union with the National Labor Relations Board. After investigation, the charges were dismissed and the dismissals were upheld on appeal.

On October 10, 2003, plaintiff filed her complaint in the instant federal action. At that time, she was represented by counsel; but she is currently representing herself. Her claims are: breach of the collective bargaining agreement against Raycom; violation of Section 301 of the Labor Management Relations Act against the Union; intentional interference by Raycom with her freedom to make contracts in violation of the Constitution and 42 U.S.C. § 1981 based upon her race (African American and Black); race discrimination by Raycom in violation of Ohio Revised Code Sections 4112.02 and 4112.99; retaliation by Raycom in violation of Ohio Revised Code Section 4112.02; violation of the Fair Labor Standards Act; and Ohio Wage law Retaliation regarding overtime pursuant to Ohio Revised Code Section 4111.13.

## II. LAW AND ANALYSIS

### STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is not material unless it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the court must view the

facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F. 3d 900, 907 (6th Cir. 2001). When no reasonable jury could return a verdict for the non-moving party, no genuine issue exists for trial. *Id.*

### UNION'S MOTION FOR SUMMARY JUDGMENT

The Union, Local 42, moves for summary judgment in its favor. Plaintiff's only claim against the Union is in Count II, alleging the Union breached the collective bargaining agreement. Cuyler does not allege breach of the duty of fair representation in her complaint. Her attempt to amend was denied some time ago when this case was before Judge Kathleen O'Malley. This Court need not, and will not, extend itself to liberally construe plaintiff's pleadings since she was counseled by an attorney, who presumably drafted and signed the original complaint. Generally, the Union owes its bargaining unit members a duty of fair representation – which duty arises by statute and not by contract. An allegation that an employee was wrongfully discharged in violation of a collective bargaining agreement must be made against the employer not the union. So, no legitimate breach of contract claim lies against Local 42. *Allen v. Allied Plant Maintenance Co.*, 881 F. 2d 291 (6th Cir. 1989).

In a hybrid Section 301 claim under the Labor Management Relations Act, such as the instant one, the plaintiff must show that the Union breached its duty and that said breach led to the employer's breach of contract. *White v. Anchor Motor Freight, Inc.*, 899 F. 2d 555, 559 (6th Cir. 1990); *Adcox v. Teledyne, Inc.*, 810 F. Supp. 909, 916 (N.D. Ohio 1992). The two actions

are interdependent; and if one fails, the other must necessarily fail with it. *Id*.

Even if the Court were to interpret plaintiff's allegations as a claim for breach of the duty of fair representation, that claim could only be maintained as to the processing of the grievance challenging her discharge.  Any other supposed violation of the Union's obligation would have to be brought in a complaint within six months of when the action accrued - when a plaintiff learns or reasonably should have learned that the Union was not going to pursue a grievance any further. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151 (1983).

Cuyler also failed to exhaust her grievance remedies.  An employee must attempt to use the contractual grievance procedure agreed upon by the employer and the union before filing a lawsuit.  Under the collective bargaining agreement here, a grievance must be reduced to writing and presented to Raycom's General Manager within 14 days of the event giving rise to it or else it is waived.  The Union Stewards offered to provide Cuyler a Statement of Occurrence Form which she could have completed regarding her various non-discharge issues.  After that, if the steward found the complaint viable, the steward would complete a grievance form and present it to the company.  According to deposition evidence, Cuyler refused to follow that procedure.

Plaintiff was equally obliged to exhaust the remedies provided by the Union's Constitution and By-Laws. Cuyler could have, but did not, pursue a petition to the Local's Executive Board – the first of her available internal union remedies - concerning her discharge from Raycom.  At her deposition, she explained that she believed it would be pointless.  Cuyler has not overcome her obligation to exhaust internal union remedies.

A union's conduct breaches its duty to a union member when it is "so far outside a 'wide

-7-

range of reasonableness' that it is wholly 'irrational or arbitrary.'" *Air Line Pilots Assn. Intl. v. O'Neill*, 111 S. Ct. 1127, 1136 (1991) (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)). Plaintiff has no Rule 56 evidence of arbitrariness. A negligent, or even unwise decision is not arbitrary or in bad faith. *Poole v. Budd Co.*, 706 F. 2d 181, 183 (6th Cir. 1983). The Union used its discretion to evaluate the merits of Cuyler's claims. Plaintiff contends, without proof, that other employees "did far more worse things" and were treated differently or more leniently. Plaintiff argues further that the Union said nothing on her behalf at the discharge meeting. However, she left before the Union Stewards spoke up about the severity of the discipline. The Union filed a grievance, did investigation, interviewed her and others, and initiated the arbitration process. Plaintiff has presented no evidence to create an issue of fact as to whether the Union acted in a discriminatory or arbitrary manner. The refusal to take a grievance to arbitration does not establish a breach of the duty of fair representation. *Vaca v. Sipes*, 386 U.S. 171 at 192-193 (1967). Plaintiff has the burden to show that the failure to arbitrate was based on an improper motive on the Union's part. *Balowski v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America*, 372 F. 2d 829, 834 (6th Cir. 1967). The Union need only establish a legitimate rationale for its decision, action or inaction. *Ruzicka II v. General Motors Corp.*, 649 F. 2d 1207 (6th Cir. 1981).

     Even if Plaintiff could prove that the Union violated its duty of fair representation, she would also be required to show, with Rule 56 evidence, that if not for the Union's alleged misconduct, the outcome of the grievance process would have been different. *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F. 3d 573, 585 (6th Cir. 1994). Plaintiff bears the heavy burden of proving that the process

was seriously flawed. *Id.* at 585.  That burden has not been met here.

### **RAYCOM'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff claims that Raycom breached the collective bargaining agreement by retaliating against her, discriminating against her, and terminating her without just cause.  To survive summary judgment, Cuyler must establish a prima facie case that Raycom discriminated against her on the basis of her race in violation of 42 U.S.C. § 1981, and Ohio Revised Code Sections 4112.02 and 4112.99.  Establishing a prima facie case, by direct or circumstantial evidence, creates a rebuttable presumption of discrimination and the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for taking the adverse employment action.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  If the defendant meets this burden, then the plaintiff must prove that the proffered reason was actually a pretext to hide unlawful discrimination.  *Id.* at 804.  Plaintiff must show that 1) she is member of a protected group; 2) she was subject to an adverse employment decision; 3) she was qualified for the position; and 4) she was replaced by a person outside of the protected class.  *Id.* at 802.

Cuyler cannot prevail here because she cannot meet the last prong of a prima facie case, i.e., that she was replaced by a person outside of the protected class. The evidence shows that Cuyler was replaced by an African American woman named January Keaton, who was promoted from part-time production assistant to full-time production assistant on February 24, 2003.

Assuming that Cuyler were to get past the hurdle of the prima facie case, she would still be unable to show that the reason behind her termination was pretextual.  Cuyler cannot counter witness statements regarding the fact that she delivered the scripts too late to the on-air newscasters

on February 7, 2003. Moreover, management had no basis to disbelieve the Executive Producer and the anchor of the newscast – particularly when plaintiff's error occurred during the crucial February "sweeps".

Plaintiff's various other complaints do not rise to racial discrimination in employment. All production assistants hired in 2002 were paid at the same rate by the Union contract. Newscast assignments were not based on seniority and she would perform the same functions no matter which newscast she was responsible for – morning or evening, weekday or weekend. The assignment of days off was not made by seniority and even if plaintiff did not receive the favorable days she sought, that is not an adverse employment action within the *McDonnell Douglas* framework.

Cuyler attempts to make a claim regarding compensation for overtime. She cannot surmount the summary judgment burden since she cannot identify any amount that her employer owed her for unpaid overtime. Moreover, the overtime issue is not squarely before the Court in that the amendment of the complaint to add such allegations was denied.

In her supposed retaliation claim, Cuyler asserts that she was engaged in protected activity when she questioned wages and hours. Raycom denies that these are protected activities and demonstrates that Cuyler failed to follow proper procedures for making such complaints. Nevertheless, she cannot meet her burden of proving, with appropriate Rule 56 evidence that the termination decision-makers had knowledge of her supposed "protected activity". Thus, the causal link is lacking for the establishment of a viable retaliation claim under Ohio Revised Code Section 4112.

An employee must exhaust any exclusive grievance and arbitration procedure in the

collective bargaining agreement before bringing a breach of contract action against the employer. *Poole,* 706 F. 2d at 183.  The evidence here is clear that Cuyler did not fulfill her obligation of exhaustion of remedies.

Raycom has presented evidence in Rule 56 form, i.e., affidavits and depositions, as to efforts to resolve pay and hour disputes; as to meetings which were held to air plaintiff's concerns; and as to the various incidents and work infractions involving Cuyler.  (Exhibits "D" and "E" attached to Raycom's Reply Brief).  Plaintiff has wholly failed to counter with any appropriate evidence of her own  – rather, only bare accusations and broad conclusions.

### III. CONCLUSION

For all of the above-stated reasons and since there are no genuine issues of material fact and defendants are entitled to judgment as a matter of law, summary judgment is granted in favor of defendants Raycom and the Union and against plaintiff Shalonda Cuyler on every count and claim in her complaint.

**IT IS SO ORDERED**.

**DATE**:  8/01/05

/s/ Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**United States District Judge**
(Signed original on file)